IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
MAR 1 8 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**MICHAEL DONNELL BUTTS,**

    Petitioner,

v.                                                  Criminal No. 2:09-cr-2

**UNITED STATES OF AMERICA,**

    Respondent.

## *MEMORANDUM OPINION & ORDER*

Before the Court is Michael Donnell Butts' ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 107. The Government opposed the motion and Petitioner replied. ECF Nos. 108, 109. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 6, 2009, Petitioner were named in a five-count Superseding Indictment. ECF No. 45. Petitioner was charged with Conspiracy to Tamper with a Witness/Informant in violation of 18 U.S.C. § 1512(k) (Count One); Conspiracy to Retaliate Against a Witness/Informant in violation of 18 U.S.C. § 1513(f) (Count Two); Tampering with a Witness/Informant in violation of 18 U.S.C. § 1512(a)(1)(A) and (a)(3)(A) (Count Three); Retaliating Against a Witness/Informant in violation of 18 U.S.C. § 1513(a)(1)(B) and (a)(2)(A) (Count Four); and Use of a Firearm Resulting in Death, in violation of 18 U.S.C. § 924(c) and (j) (Count Five). *Id.* On May 26, 2009, Petitioner pled guilty to all five counts. ECF Nos. 71, 72 (Sealed). According to his Presentencing Report ("PSR"), Petitioner, working at the request of a narcotics trafficker, recruited multiple triggermen, provided them with weapons, and accompanied them to the shooting of three federal witnesses. Two were killed and one was injured but survived. PSR at ¶¶ 6-21 (Sealed).

1

Petitioner admitted responsibility in arranging and recruiting the co-defendants to kill the three victims. *Id.* at ¶ 27. In his PSR, Petitioner reported his overall health as poor and noted that he suffered from diabetes, Hepatitis C, high blood pressure, and a hernia *Id.* at ¶ 72. Petitioner was assessed a total offense level of 44, a criminal history category V, and a recommended guideline provision of life imprisonment *Id.* at ¶¶ 102-103. On September 28, 2009, the Court imposed a sentence of two consecutive life sentences. ECF No. 88. In 2016, Petitioner's sentence was reduced to 396 months' imprisonment followed by five (5) years of supervised release. ECF No. 102 at 2. Petitioner's current projected release date is April 2, 2037 and he is currently incarcerated at FCC Coleman II, in Florida.

On January 4, 2021, Petitioner filed his *pro se* motion for compassionate release. ECF No. 102. On February 9, 2021, Petitioner filed the motion through counsel. ECF No. 107. The Government opposed the motion and Petitioner replied. ECF No. 108. 109.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. ECF Nos. 102, 107. At age 64, Petitioner argues that his underlying conditions place him at high risk for serious illness or death if he contracts the COVID-19 virus. *Id.* Accordingly, Petitioner requests that this Court grant him compassionate release and allow him to begin supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative

remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A)

through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

**A. The Exhaustion Requirement**

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion with the Court. On November 24, 2020, Petitioner submitted a Request for Reduction in Sentence Form to the Warden at FCC Coleman II. ECF No. 102 at Exhibit 2. On December 4, 2020, the Warden denied Petitioner's request. *Id.* Petitioner filed his Motion for Compassionate

4

release on January 4, 2021. *Id.* Thus, more than 30 days passed since Petitioner filed his request with the Warden

**B. Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does show a potential susceptibility to serious health risks from COVID-19. Moreover, the Government does not contest that Petitioner's medical conditions make him particularly susceptible to serious complications. ECF No. 108 at 11. According to Petitioner's medical records, at age 64, he suffers from asthma, Chronic obstructive pulmonary disease (COPD), type II diabetes, hypertension, Hepatitis C, and high cholesterol. *See* PSR at ¶¶ 72-74; *see also,* ECF No. 107 at Exhibit 1. Furthermore, in July 2019, Petitioner was prescribed an inhaler to use twice a day to control his asthma. *Id.* However, Petitioner was reluctant to take another inhaler to control his COPD. *Id.* Petitioner is also prescribed daily medication to control his diabetes, hypertension, and cholesterol. *Id.* According to the Centers for Disease Control and

5

Prevention, individuals with COPD and type II diabetes are at an increased risk for severe illness from COVID-19.[1] Furthermore, individuals with moderate to severe asthma and hypertension (commonly known as hyperlipidemia) might also be at an increased risk for severe illness if they contract the virus. Although Petitioner's health might be at increased right because of COVID-19, the Court finds that Petitioner's illnesses are being managed in BOP custody.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. As of March 16, 2021, the BOP has reported a total of 2 current (209 recovered, 1 death) positive cases of COVID-19 for inmates and 27 current (24 recovered) for staff at FCC Coleman II.[2] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, and most critically, the § 3553(a) factors do not weigh in favor of Petitioner's

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html
[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

6

compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, in 2001, working at the request of a narcotics trafficker, Petitioner recruited multiple men, provided them with weapons, and accompanied them to murder three separate victims: K.P., M.B., and J.B. One victim was shot and survived and the other was stabbed before he was able to fight off his attackers. The third victim, J.B., was killed in the front yard of his own home. *See* PSR at ¶¶ 5-7. Petitioner not only helped plan the murders, he also assisted in driving the triggermen to and from the scenes of the murders. Each of these three individuals was targeted because they were believed to be federal witnesses or cooperating with law enforcement. Petitioner received $2,500 for arranging the shooting of M.B. and another $2,500 for the murder of J.B., and paid $1,500 to the co-conspirator who shot K.P. and another $1,000 to the co-conspirator who murdered J.B. *Id.* Petitioner's offense is also indicative of his disregard for the rule of law because he orchestrated three killings to interfere with federal criminal proceedings.

Petitioner also has an extensive career criminal record, starting at age 12, when he was convicted of Petty Larceny and Trespassing. *See* PSR at ¶ 31. Then, from ages 18 to 40, Petitioner was convicted of multiple serious offenses including Conceal Merchandise, Petty Larceny, Forgery, Robbery, Receiving Stolen Goods, DUI, Reckless Driving, Assault, Possession of Cocaine, Burglary, and breaking and entering. *Id.* at ¶¶ 34-65 Accordingly, Petitioner was assessed a Criminal History Category of V. As a result of his crimes and criminal history, Petitioner was originally sentenced to two consecutive life sentences. ECF No. 88. However, in 2016, Petitioner's sentence was reduced to 396 months' imprisonment followed by five (5) years of supervised release. ECF No. 102 at 2. To date, Petitioner has only served one-third of his reduced sentence. Therefore, given the seriousness of Petitioner's crimes and criminal history, the Court finds that Petitioner's release would not promote the respect for law or provide adequate deterrence.

On the other hand, Petitioner has demonstrated some progress while in BOP custody. Petitioner's disciplinary record shows only two incidents involving the possession of drugs/alcohol and the possession of an unauthorized item. *See* ECF No. 108 at Exhibit 1. Moreover, Petitioner has completed multiple educational and drug treatment programs. ECF No. 107 at Exhibit 2. Overall, however, the § 3553(a) factors do not weigh in his favor. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
March 18, 2021

UNITED STATES DISTRICT JUDGE

8